23CA0335 Peo v Ryan 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0335
Arapahoe County District Court No. 21CR2818
Honorable Darren L. Vahle, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Reginald James Ryan,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Lipinsky and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Taylor J. Hoy, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Reginald James Ryan (Ryan), appeals his judgment of conviction entered on a jury verdict finding him guilty of possession of a weapon by a previous offender (POWPO). § 18-12-108(1), C.R.S. 2021.[1]

¶ 2     Ryan contends that (1) the record is insufficient to support a determination that Officer Thomas McClay (Officer McClay) had a reasonable basis to stop the vehicle in which Ryan was a passenger, and (2) the 2021 POWPO statute is unconstitutional on its face and as applied to him because it violates the Second Amendment to the United States Constitution.

---

[1] At the time of Ryan's arrest and charge, section 18-12-108(1), C.R.S. 2021, stated that

> [a] person commits the crime of possession of a weapon by a previous offender if the person knowingly possesses, uses, or carries upon his or her person a firearm as described in section 18-1-901(3)(h) or any other weapon that is subject to the provisions of this article subsequent to the person's conviction for a felony, or subsequent to the person's conviction for attempt or conspiracy to commit a felony, under Colorado or any other state's law or under federal law.

The statute has since been amended.

¶ 3    We disagree with Ryan's first contention and decline to address the second; thus, we affirm.

## I.    Background

¶ 4    Officer McClay initiated a traffic stop after he observed a vehicle's brake lights were broken. Ryan was a passenger in the vehicle. While Officer McClay spoke with the driver, Sergeant Adrian Marquez (Sergeant Marquez) arrived to assist; he spoke with Ryan. During Sergeant Marquez's interaction with Ryan, he suspected the vehicle was stolen; noticed Ryan was "fidgety"; heard "clinking," like metal objects falling, coming from between the center console and the seat; and saw at Ryan's feet a tool bag with the handle of a hammer sticking out. Eventually, Ryan was removed from the vehicle, the officers found a handgun, .22 caliber casings, and loaded cartridges inside the vehicle.

¶ 5    The prosecution charged Ryan with one count of POWPO. Before trial, Ryan filed two motions to suppress, one seeking to suppress his statements to the officers while he was in the vehicle because his *Miranda* rights were violated, and the second arguing that, because he was illegally seized after the initial traffic stop, the

evidence that the police discovered in the vehicle should be suppressed.

¶ 6 At the suppression hearing, the prosecutor presented testimony from Sergeant Marquez and another officer who had been on the scene. The district court denied both motions.

¶ 7 The jury found Ryan guilty as charged. The district court sentenced Ryan to eighteen months in the custody of the Department of Corrections.

## II. Basis to Stop the Vehicle

¶ 8 Ryan argues that the evidence was insufficient to support a determination that Officer McClay had reasonable suspicion to stop the vehicle. We disagree.

### A. Preservation

¶ 9 The parties disagree as to whether Ryan waived this contention because he did not raise it in his motions or at the suppression hearing. Generally, unless there is evidence in the record that defense counsel made a conscious decision to strategically not file a pretrial motion to suppress or raise an argument at the suppression hearing, we view an argument raised for the first time on appeal as forfeited, not waived. *Phillips v.*

*People*, 2019 CO 72, ¶ 22 n.4.  We review forfeited claims under the plain error standard of review.  *Id.*

### B.     Standard of Review and Applicable Law

¶ 10     Appellate review of a suppression ruling presents a mixed question of law and fact.  *People v. Alameno*, 193 P.3d 830, 834 (Colo. 2008).  We defer to the district court's factual findings if they are supported by the record but review the court's legal conclusions de novo.  *Id.*; *see also People v. Ortega*, 34 P.3d 986, 990 (Colo. 2001) ("In reviewing a court's conclusions of law, however, we apply a de novo standard of review to ascertain whether its legal conclusions are supported by sufficient evidence and whether it has applied the correct standard.").

¶ 11     "The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures."  *People v. Vaughn*, 2014 CO 71, ¶ 10.  "An investigatory stop, including a traffic stop, does not violate the Fourth Amendment's protections when there are specific, articulable facts that give rise to an officer's reasonable suspicion of criminal activity."  *Id.* at ¶ 11.  "In the context of traffic stops, an officer need only have a reasonable suspicion of a traffic violation — i.e., an objectively reasonable basis to believe that a

driver has committed a traffic offense — in order to pull the driver over." *Id.*

C.   Analysis

¶ 12    The record supports the district court's finding that Officer McClay had reasonable suspicion to believe the driver of the vehicle had engaged in a traffic violation.  We reach this conclusion for two reasons.

¶ 13    First, a traffic infraction, "such as driving with a broken taillight, is sufficient justification for a police vehicle stop." *People v. Brant*, 252 P.3d 459, 462 (Colo. 2011).  Although Officer McClay did not testify at the suppression hearing, Sergeant Marquez noted twice in his testimony that Officer McClay stopped the vehicle because of a traffic infraction.  The sergeant testified that Officer McClay told him that the officer had pulled the vehicle over because of either the taillights or the brake lights.  Later, on cross-examination, Sergeant Marquez specified that the "traffic violation involv[ed] the rear lights or taillights" being broken.

¶ 14    Second, Ryan's counsel appeared to concede there was sufficient evidence to stop the vehicle, as counsel said, "A traffic infraction of whatever capacity had happened."  The prosecutor

explained that, "[a]s [Ryan's counsel] mentioned, it is not before [the district court] to determine whether there was reasonable suspicion for that stop at all. The question before [the district court] is whether there was reason to detain Mr. Ryan." Ryan never objected to Sergeant Marquez's testimony about the reason for the initial stop, nor does he challenge the admissibility of such testimony in this appeal. *See Phillips*, ¶ 12 ("[T]o preserve a claim for review on appeal, the party claiming error must have supplied the right ground for the request" and cannot change the basis of his argument on appeal from what he advanced below. (quoting *Novak v. Craven*, 195 P.3d 1115, 1120 (Colo. App. 2008))).

¶ 15    Nonetheless, he now contends that, because Officer McClay did not testify at the hearing, the record does not contain sufficient evidence for the court's finding. But we see nothing in the transcript indicating that he objected to Officer McClay's absence at that hearing. And Ryan did not challenge the stop itself in his motion to suppress; rather, he solely focused on the search following the stop.

¶ 16    Likewise, his reliance on *State v. Horner*, 494 P.3d 373, 374 (Or. Ct. App. 2021) (per curiam), is misplaced because that case is

distinguishable. There, only one officer of the seven who had responded to a traffic incident testified at the suppression hearing, and she said she "did not know why the original traffic stop occurred." *Id.* Thus, the appellate court held the record was devoid of any "sufficient facts to support a conclusion that [the police] had objective, reasonable suspicion to stop the car in which defendant was a passenger." *Id.*

¶ 17 In addition to the case being distinguishable on its facts, the prosecution in *Horner* "concede[d] that there was insufficient evidence adduced during the suppression hearing to establish the reasonable suspicion required to support a traffic stop under the Fourth Amendment." *Id.* And regardless, that out-of-state case is not binding authority.

¶ 18 Ryan also contends that the evidence was insufficient because Sergeant Marquez testified that he only learned after the search of the vehicle why Officer McClay had pulled it over, and therefore the fellow officer rule cannot apply. This is because, Ryan continues, "the fellow officer rule imputes information that the police possess as a whole to an individual officer who effects a search or arrest if (1) that officer acts pursuant to a coordinated investigation and (2)

7

the police possess the information at the time of the search or arrest." *Grassi v. People*, 2014 CO 12, ¶ 1. In other words, because the sergeant's testimony suggests he learned of the reason for the stop only after the arrest or search, this doctrine is inapplicable.

¶ 19 But Ryan did not object to the sergeant's testimony on grounds that the fellow officer rule did not apply or on the basis that the statement was hearsay. And Ryan also does not cite, and we are not aware of, any case holding that a district court was put on notice that the admission of such testimony was plain error. *See Scott v. People*, 2017 CO 16, ¶ 16 (appellate courts generally hold that, when reviewing for plain error, the alleged error must "be so obvious that a trial judge should be able to avoid it without the benefit of an objection").

¶ 20 Therefore, viewing the evidence in the light most favorable to the prevailing party, we conclude there was sufficient evidence to support the court's finding that Officer McClay had reasonable suspicion to stop the vehicle for a traffic infraction.

### III. Constitutional Challenge to the 2021 POWPO Statute

¶ 21 Relying on the United States Supreme Court's opinions in *New York State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1 (2022), and

*District of Columbia v. Heller*, 554 U.S. 570 (2008), Ryan contends that the 2021 POWPO statute violates the Second Amendment to the United States Constitution, both facially and as applied to him. *See* U.S. Const. amend. II.  We decline to address this argument on the merits because Ryan did not preserve it.

¶ 22    Ryan acknowledges that he did not challenge the constitutionality of the POWPO statute in the district court, but he argues that we have discretion to consider his contention for the first time on appeal.  *See People v. Houser*, 2013 COA 11, ¶ 35; *People v. Allman*, 2012 COA 212, ¶ 16.

¶ 23    That may be correct, but our decision to do so depends in large part on the existence of a developed factual record.  *See Allman*, ¶ 13 (holding that "[c]onstitutional arguments must be explicitly raised in the trial court" because they "alert the trial court to the challenger's contentions and enable the trial court to make a factual record on the issue, which is imperative to appellate review"); *People v. Veren*, 140 P.3d 131, 140 (Colo. App. 2005) (declining to address as-applied challenge because of the need for a factual record).  We exercise this discretion when the factual record is sufficiently developed to allow us to resolve the issue.  *Allman,*

¶ 15.  Where the record is insufficient, however, we generally do not address unpreserved constitutional issues.  *Id.* at ¶ 14.

¶ 24     *Bruen* held that the government must support the challenged firearm regulation with "historical evidence" because such evidence lies at the heart of analyzing whether the regulation is constitutional.  597 U.S. at 38; *see United States v. Rahimi*, 602 U.S. 680, 689 (2024).  Because Ryan did not raise his constitutional challenge in the district court, the appellate record is devoid of any historical evidence on the constitutionality of the 2021 POWPO statute under the test outlined in *Bruen*.  In the absence of a developed historical record, it would not serve the goals of "efficiency and judicial economy" for us to address Ryan's Second Amendment challenge for the first time on appeal and, thus, we decline to do so.  *Fuentes-Espinoza v. People*, 2017 CO 98, ¶ 19.

IV.   Conclusion

¶ 25     The judgment of conviction is affirmed.

JUDGE LIPINSKY and JUDGE MOULTRIE concur.